**Umar JALLOH, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondent.**

**No. 05–4229–AG.**

United States Court of Appeals, Second Circuit.

May 18, 2006.

Theodore Vialet, New York, N.Y., for Petitioner.

Robert F. Daley, Jr., Assistant United States Attorney for Jonathan S. Gasser, United States Attorney for the District of South Carolina, Columbia, S.C., for Respondent.

PRESENT: Hon. THOMAS J. MESKILL, Hon. GUIDO CALABRESI, and Hon. PETER W. HALL, Circuit Judges.

SUMMARY ORDER

Petitioner Umar Jalloh (hereinafter "petitioner" or "Jalloh") seeks review of the decision of the Board of Immigration Appeals ("BIA") affirming the immigration judge's ("IJ") denial of asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") on adverse credibility grounds. We assume that the parties are familiar with the facts, the procedural history, and the scope of the issues presented in the petition for review.

"Where, as here, the BIA agrees with the IJ's conclusion that a petitioner is not credible and, without rejecting any of the IJ's grounds for decision, emphasizes particular aspects of that decision, we will review both the BIA's and IJ's opinions—or more precisely, we review the IJ's decision including the portions not explicitly discussed by the BIA." *Yun–Zui Guan v. Gonzales,* 432 F.3d 391, 394 (2d Cir.2005) (per curiam). We review the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see, e.g., Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004). Nevertheless, "the fact that the [agency] has relied primarily on credibility grounds in dismissing an asylum application cannot insulate the decision from review." *Ramsameachire v. Ashcroft,* 357 F.3d 169, 178 (2d Cir.2004). An adverse credibility determination must be based on "specific, cogent reasons" that "bear a legitimate nexus" to the finding. *Secaida–Rosales v. INS,* 331 F.3d 297, 307 (2d Cir.2003).

In this case, the IJ's credibility decision rested on four alleged discrepancies in petitioner's claim. Because none of the four reasons given by the IJ are supported by substantial evidence, we grant the petition for review.

First, with respect to the medical certificate submitted by Jalloh, the IJ argued that there was a discrepancy between petitioner's testimony—that the document was created in May 2002 when he completed his medical treatment in Guinea—and the date on the certificate itself, February 17, 2003. An examination of the certificate does not bear out the IJ's assertion. In fact, in the middle of the page, the doctors who drafted the document certify that they examined the applicant "on this day of May 05, 2002." It is true that the certificate was also twice stamped with the February 17, 2003 date. There is no evidence, however, that the stamp signifies when the document was created or issued. As a result, we conclude that the IJ's first concern is not supported by record evidence.

Moreover, no one identified this alleged inconsistency during the hearing itself, and, hence, Jalloh never had an opportunity to clarify the dates for the court. To rely on a subtle (and perhaps non-existent) discrepancy without first identifying it for the alien is error under *Ming Shi Xue v. BIA,* 439 F.3d 111, 121 (2d Cir.2006) ("[W]here the perceived incongruities in an asylum applicant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them.").

The IJ also claimed that the petitioner had given inconsistent testimony as to the date of his arrest in Guinea. The IJ correctly observed that Jalloh testified during direct examination that he was arrested in March 2002. On cross examination, Jalloh gave somewhat unclear testimony about the year, indicating that it may have been May of 2002 or 2003. Neither the IJ nor

the lawyer for the government asked the applicant to resolve the ambiguity at that time. On redirect, however, the applicant promptly clarified that the arrest occurred in March of 2002. Under the circumstances, we find that the record does not support the IJ's finding that petitioner had given inconsistent testimony.

Third, the IJ expressed concern that Jalloh's birth certificate stated that it had been issued in 1967, rather than in 1997, which is when, according to petitioner, he obtained a duplicate copy from the government of Sierra Leone. Without explanation, the IJ assumed that the government authorities would list, as the date of issuance, when the duplicate was made for the alien (1997), rather than when the birth certificate was first issued (1967). The IJ gave no reply to the perfectly plausible explanation given by Jalloh that the certificate reflected the original date of issuance, not the date on which he procured a copy for himself. *See Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 403 (2d Cir.2005) ("Although the IJ was not required to credit [petitioner's] explanations even if they appear plausible on a cold record ... [the IJ] was required to take those explanations into account.... Absent a reasoned evaluation of [petitioner's] explanations, the IJ's conclusion that his story is implausible was based on flawed reasoning and, therefore, cannot constitute substantial evidence supporting [the IJ's] conclusion." (internal citations omitted)).

Finally, the IJ asserted that there was a discrepancy between Jalloh's story of how he preserved the birth certificate and his explanation for why he did not have a national identification card. Specifically, the IJ contended that Jalloh's story for why he did not have an ID card—*i.e.,* that he left his home in Sierra Leone "with only the clothes that he was wearing" after "his home was burned to the ground"—was inconsistent with petitioner's explanation

of how he returned to his home to retrieve the Koran in which he had stored his birth certificate. But this is not the story that Jalloh gave. In a clear misreading of the transcript, the IJ appears to have conflated Jalloh's escape from his home in Kolo, Sierra Leone, on the one hand, with his departure from his home in Guinea, on the other. Accordingly, we find that this last reason is also not supported by substantial evidence.

For the foregoing reasons, we conclude that the decision by the IJ and BIA denying petitioner's claims on adverse credibility grounds were not supported by substantial evidence. Accordingly, we GRANT the petition for review, VACATE the order by the BIA, and REMAND the case for further proceedings consistent with this decision.